NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0950n.06

**Case No. 11-1611**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED

*Aug 27, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| JOYCE A. GULLEY, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| COUNTY OF OAKLAND, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

**BEFORE:  COLE and DONALD, Circuit Judges; SARGUS, District Judge.**[*]

**SARGUS, District Judge.**   Plaintiff-Appellant Joyce Gulley appeals the district court's (1) grant of summary judgment in favor of Defendant-Appellee Oakland County, (2) denial of Gulley's motion for reconsideration of that decision, and (3) denial of Gulley's motion to extend discovery and to supplement her witness and exhibit lists.  Gulley alleges that she suffered discrimination and retaliation based on her race, gender, and age when Oakland County eliminated her position and denied her request to "bump" a less senior employee from a position to which she desired to transfer.  Gulley brought her claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*[1]

[*]The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation

[1]Gulley alleges in her complaint that her race, gender, and age claims are filed under Title VII of the Civil Rights Act of 1964.  The parties and the district court address her age discrimination claim

Case No. 11-1611
*Gulley v. County of Oakland*

The district court granted summary judgment in favor of Oakland County, concluding that Gulley

failed to establish a *prima facie* case of discrimination on either her termination or failure to transfer

claims and that even if she had, Oakland County offered legitimate, nondiscriminatory reasons for

its actions that Gulley failed to show were pretext for discrimination. The district court indicated

that Gulley brought discrimination and retaliation claims, but did not otherwise address Gulley's

retaliation claim. After concluding that Oakland County was entitled to summary judgment, the

district court denied as moot Gulley's request to extend discovery and to supplement her witness and

exhibit lists. Gulley filed a motion for reconsideration of the district court's grant of summary

judgment, arguing that there was a palpable defect by which the court rendered its decision. The

district court denied Gulley's request for reconsideration, finding that she had merely presented the

same issues it had already ruled upon. For the reasons that follow, we **AFFIRM** all three of the

district court's decisions.

## I. BACKGROUND

The district court accurately set forth the uncontroverted facts as follows:

> Plaintiff Joyce Gulley, a 57 year old, African American female, was hired by
> the Oakland County Medical Examiner's Office on November 29, 1999, as a Family
> Service Counselor ("FSC"), one of three FSC positions newly created with the help
> of grant funding. When grant funding was lost October 31, 2001, defendant Oakland

---

under Title VII. That statute, however, does not prohibit age discrimination. The Age
Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, is the proper statute under
which Gulley should have brought her age discrimination claim. For purposes of our analysis, this
error is of no consequence because we utilize the same framework to evaluate discrimination under
both of these statutes. *Policastro v. Northwest Airlines*, 297 F.3d 535, 538 (6th Cir. 2002) ("[W]e
recognize that claims of discrimination brought pursuant to Title VII, 42 U.S.C. § 2000e *et seq.*, and
the ADEA, 29 U.S.C. § 621 *et seq.*, are analyzed under the same framework.").

County reduced the FSC positions to one, to be financed from the general fund. [Gulley] was given the remaining FSC position, which she held from November 1, 2001, to March 27, 2009.

In March 2009, defendant Oakland County faced a budget shortage. The Medical Examiner's Office was tasked with determining ways to reduce its budget. One of the recommendations included eliminating the general fund FSC position, as well as eliminating a Forensic Toxicology Chemist position and eliminating benefits for five other employees. [Oakland County] adopted this recommendation. Human Resources notified [Gulley] in a meeting on March 3, 2009, of the planned elimination of her position effective March 27, 2009. [Gulley] was also told at this meeting that she could transfer into another position at the Veterans' Services Department in Oakland County.

At that time, [Gulley] indicated that she would like to "bump" into a Medical Examiner Investigator ("MEI") position, pursuant to the Oakland County Merit System, which allows more senior employees to replace employees with less seniority, provided the more senior employee is qualified for the position. Human Resources agreed to look into [Gulley]'s qualifications for an MEI position based on her current job description and personnel file. Human Resources also asked [Gulley] to provide any information on experience outside her employment with Oakland County; however, [Gulley] failed to do so.

Human Resources subsequently informed [Gulley] that based on the materials they reviewed, she was not qualified for an MEI position but that she could obtain a statement from her supervisor that she had been performing the duties of an MEI. [Gulley] failed to obtain such a statement. [Gulley] did contact Dr. Dragovic, one of her supervisors, but [Gulley] never followed up on his suggestion to arrange a meeting to discuss her qualifications.[2]

[Gulley] began the transfer process into the position offered to her in the Veterans' Services Department on March 26, 2009, but revoked her transfer and filed a complaint with the Equal Employment Opportunity Commission on March 30, 2009. [Gulley] then withdrew the charge and obtained a right to sue letter.

(Dist. Ct. Op. Granting Mot. Summ. J., Dist. Ct. Docket No. 33, at 1-3.)

---

[2] Gulley claims that it was Dr. Dragovic who failed to follow up with her, which is why she never arranged the meeting. As our analysis *infra* shows, this dispute is not material to the issues before the Court.

On October 27, 2009, Gulley filed suit against Oakland County alleging violations of Title VII of the Civil Rights Act of 1964, for discriminatory termination and failure to permit her to replace a less senior employee for an MEI position. (Compl., Dist. Ct. Docket No. 1, ¶ 4.) On June 18, 2010, one month after the close of discovery, Oakland County timely filed a motion for summary judgment, arguing that it was entitled to judgment as a matter of law on all of Gulley's claims. (Mot. for Summ. J., Dist. Ct. Docket No. 18.)

Also on June 18, 2010, after Oakland County's Motion for Summary Judgment was filed, Gulley filed a Motion to Extend Discovery and/or to Supplement Exhibit and Witness Lists. (Mot. for Extension of Time or to Supplement, Dist. Ct. Docket No. 19.)

The district court held oral argument on Oakland County's Motion for Summary Judgment and issued its decision granting the motion. (Dist. Ct. Op. Granting Mot. Summ. J., Dist. Ct. Docket No. 33.) In its decision, the district court indicated that Gulley filed claims for discrimination and retaliation, analyzed her discrimination claims, and granted summary judgment in favor of Oakland County. In the same decision, the district court also denied as moot Gulley's request to extend discovery and/or supplement her exhibit and witness lists.

On September 10, 2010, Gulley moved for reconsideration of the district court's grant of summary judgment in Oakland County's favor. (Mot. Recons., Dist. Ct. Docket No. 37.) The district court denied Gulley's Motion for Reconsideration on April 19, 2011. (Dist. Ct. Op. Denying Mot. Recons., Dist. Ct. Docket No. 42.)

This appeal follows, challenging the district court's grant of summary judgment to Oakland

Case No. 11-1611
*Gulley v. County of Oakland*

County,[3] its denial of Gulley's request for reconsideration of that decision, and its denial of Gulley's request for an extension of discovery and to supplement her witness and exhibit lists.

## II. ANALYSIS

### A. Grant of Motion for Summary Judgment

The district court granted Oakland County's Motion for Summary Judgment.

#### 1. Standard of Review

We "review[] a grant of summary judgment *de novo* and consider[] the facts and any inferences drawn from the facts in the light most favorable to the non-moving party." *Chapman v. UAW Local 1005*, 670 F.3d 677, 680 (6th Cir. 2012) (*en banc*) (citing *White v. Detroit Edison Co.*, 472 F.3d 420, 424 (6th Cir. 2006)). "Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving parties are entitled to judgment as a matter of law." *Id.* (citing Fed. R. Civ. P. 56(a)). "When the non-moving party fails to make a sufficient showing of an essential element of his case on which he bears the burden of proof, the moving parties are entitled to judgment as a matter of law and summary judgment is proper." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

---

[3] In her statement of issues for review, Gulley states that the district court erred in granting summary judgment in favor of Oakland County on her discrimination claim "as well as [her] retaliation" claim. (Gulley Br. at 2.) Gulley does not address her retaliation claim otherwise and has, therefore, waived any issue that may have been directed toward to it. *Dillery v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir. 2005) ("It is well-established that 'issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'") (citing *United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999)).

## 2. Discussion

To establish a Title VII or an ADEA employment discrimination claim, a plaintiff is "required to either 'present direct evidence of discrimination or introduce circumstantial evidence that would allow an inference of discriminatory treatment.'" *Carter v. Univ. of Toledo*, 349 F.3d 269, 272-73 (6th Cir. 2003) (citing *Johnson v. Kroger Co.*, 319 F.3d 858, 864-65 (6th Cir. 2003)); *see also Policastro*, 297 F.3d at 538 (ADEA utilizes Title VII framework). Where, as here, the plaintiff fails to present direct evidence of discrimination, the burden shifting framework first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and refined by *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981), applies. *Carter*, 349 F.3d at 273 (citing *Johnson*, 319 F.3d at 865–66). Under that paradigm, a plaintiff must first present a *prima facie* case of discrimination. *Id.* "Once the *prima facie* case is made, a defendant may offer any legitimate, non-discriminatory reason for the employment action, which the plaintiff may rebut by evidence of pretext; however, the burden of proof always remains with the plaintiff." *Hartsel v. Keys*, 87 F.3d 795, 800 (6th Cir. 1996) (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993)).

### a. Termination based on a reduction in force

"[T]o establish a *prima facie* case of discrimination by the defendant, 'the plaintiff must show (1) that [s]he is a member of a protected group, (2) that [s]he was subject to an adverse employment decision, (3) that [s]he was qualified for the position, and (4) that [s]he was replaced by a person outside of the protected class. . . . [or] by showing that similarly situated non-protected employees were treated more favorably.'" *Clayton v. Meijer, Inc.*, 281 F.3d 605, 610 (6th Cir. 2002)) (last alteration in original) (citation omitted). In a reduction in force ("RIF") case, like this one, the fourth

element of the *prima facie* case is modified to require the plaintiff to submit "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 547 (6th Cir. 2004) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir. 1998)). "A [RIF] situation occurs when business considerations cause an employer to eliminate one or more positions within the company." *Barnes v. GenCorp, Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990). Modification of the fourth element in a RIF situation is required because "[w]hen an employer is forced to reduce its staff for economic reasons, the most common legitimate reason for the discharge is the RIF itself." *Brocklehurst v. PPG Indus., Inc.*, 123 F.3d 890, 896 (6th Cir. 1997) (citing *Barnes*, 896 F.2d at 1465).

Gulley contends that the district court "ignor[ed] [her] *prima facie* evidence of race, color, and gender discrimination." (Gulley Br. at 14.) Gulley presents a litany of cost reduction suggestions that she claims would have saved her position and been more cost effective to Oakland County. She posits that "Oakland County's failure to adopt these budget actions, with significant cost savings, belie its claim of a RIF." *Id.* at 20 (concluding that "the cost savings for the elimination of [Gulley]'s position was negligible at best"). However, as the district court correctly explained, the business decision of Oakland County to eliminate the FSC position held by Gulley should not be questioned by a court in the absence of evidence of an impermissible motive, even if it was not the most cost effective decision. (Dist. Ct. Op. Granting Mot. Summ. J., Dist. Ct. Docket No. 33, at 4.) We have previously explained:

It is not the prerogative of the courts to engage in the post-hoc management of the

> employer's internal affairs by second-guessing how personnel could have been more equitably allotted, or cost-savings better realized. *See, e.g.*, *Graves v. Fleetguard, Inc.*, 198 F.3d 245 (Table), 1999 WL 993963, at *3 (6th Cir. Oct. 21, 1999) (quoting *Ackerman v. Diamond Shamrock Corp.*, 670 F.2d 66, 70 (6th Cir. 1982) ("The ADEA was not intended as a vehicle for judicial review of business decisions." (internal quotation marks omitted))). [The plaintiff-employee] must provide evidence not that [the defendant-employer] could have made a business decision that others might think more fair, but that [the defendant-employer] made the decision to terminate him because of his membership in a protected class.

*Norbuta v. Loctite Corp.*, 1 F. App'x 305, 314-15 (6th Cir. 2001) (reduction in force case); *see also*

*Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 462 (6th Cir. 2004) ("As we have oft times repeated,

'it is inappropriate for the judiciary to substitute its judgment for that of management.'") (quoting

*Smith v. Leggett Wire Co.*, 220 F.3d 752, 763 (6th Cir. 2000)).

Gulley offered no evidence tending to indicate that Oakland County singled her out for

discharge for impermissible reasons. Conversely, the evidence suggests that Oakland County was

motivated by fiscal concerns. Oakland County is the only Medical Examiner's Office in Michigan

to employ FSCs. (Aff. of Robert Gerds,[4] Dist. Ct. Docket No. 18-2, ¶ 8.) The number of FSCs

fluctuated over time, but was never higher than three and, when grant funding ended in 2001,

Oakland County created a general fund position to keep Gulley on as an FSC, which it was able to

fund for the next eight years. *Id.* ¶ 9(a). Ultimately, when budget cuts forced Oakland County to

engage in the current RIF that resulted in the elimination of two full time positions and the

---

[4] Gerds is the Administrator of the Oakland County Medical Examiner's Office and was Gulley's direct supervisor. (Aff. of Robert Gerds, Dist. Ct. Docket No. 18-2, ¶¶ 1–2.)

elimination of the benefits that had been provided to five other employees, it offered Gulley a position in a different department. *Id.* ¶¶ 11–12.

### b. Denial of request to bump a less senior employee

In evaluating whether Gulley established a *prima facie* case of discrimination based on Oakland County's denial of her request to bump into an MEI position, the district court relied upon the analysis utilized in non-selection cases. In that analysis, a plaintiff must show "(1) that [s]he is a member of a protected class; (2) that [s]he applied for, and did not receive, a job; (3) that [s]he was qualified for the job; and (4) that a similarly-situated person who was not in the plaintiff's protected class received the job."[5] *Seay v. TVA*, 339 F.3d 454, 463 (6th Cir. 2003) (analyzing termination pursuant to RIF and non-selection for vacant positions) (citing *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1166 (6th Cir. 1996)). The district court found that the third element of this test was not met. The district court went on, however, to explain that even if Gulley had met her burden of establishing a *prima facie* case of discriminatory failure to permit her to bump a less senior employee, Oakland County met its burden of articulating a legitimate, nondiscriminatory reason for denying Gulley the position she desired and that Gulley failed to show the reason was a pretext for discrimination.

---

[5] The court notes that this test is not directly applicable to the present facts because there was no position "available" here that was given to another person instead of Gulley. We need not address this issue because, as discussed below, Gulley fails to show that Oakland County's legitimate, nondiscriminatory reason for denying her request to bump into an MEI position was a pretext for impermissible discrimination.

Oakland County submits that it declined to permit Gulley to bump the less senior employee from the MEI position because it believed that she was not qualified for the position. (Aff. of Robert Gerds, Dist. Ct. Docket No. 18-2, ¶ 16; Aff. of Michael Zehnder,[6] Dist. Ct. Docket No. 18-3, ¶ 13.) In turn, Gulley argues that she was qualified for the MEI position and submitted evidence to the district court of her work experience and professional education to support her position. Gulley asserts that the trial court improperly engaged in credibility determinations when it accepted Oakland County's contention that she was unqualified for the MEI position over her contention and supporting evidence that she was qualified. Gulley's argument, however, misapprehends Oakland County's burden under the *McDonnel Douglas* analysis.

That is, Oakland County "need not *prove* a nondiscriminatory reason for not promoting [Gulley], but need merely *articulate* a valid rationale" for its decision. *Hartsel*, 87 F.3d at 800 (emphasis in original) (citing *St. Mary's Honor Center*, 509 U.S. at 514). Oakland County "bears only the burden of production; the burden of persuasion remains with the plaintiff at all times." *Weigel v. Baptist Hosp.*, 302 F.3d 367, 377–78 (6th Cir. 2002) (citing *Burdine*, 450 U.S. at 253). Thus, the district court was not tasked with determining whether Oakland County's contention that Gulley was not qualified for the MEI was more credible than her contention that she was qualified for the position. Instead, the district court needed only to determine whether Oakland County had met its burden of producing a legitimate, nondiscriminatory reason for denying Gulley's request to

---

[6] Zehnder is the Director of Oakland County's Public Services Department. (Aff. of Michael Zehnder, Dist. Ct. Docket No. 18-3, ¶ 1.)

10

bump into the MEI position. As to that question, the district court correctly found that Oakland County's proffered reason, *i.e.*, non-qualification, met that burden.

The burden then shifts to Gulley to show that Oakland County's stated reason "is merely a pretext for discrimination." *Id.* at 378. "Under the law of our circuit, a plaintiff can show pretext in three interrelated ways: (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009) (citing *Hedrick*, 355 F.3d at 460). "To carry her burden in opposing summary judgment, [Gulley] must produce sufficient evidence from which a jury could reasonably reject [Oakland County]'s explanation of why it" denied her request to bump into an MEI position. *Id.* at 400 (citing *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 526 (6th Cir. 2008). "Pretext is a commonsense inquiry: did the employer [take the adverse action against] the employee for the stated reason or not? This requires a court to ask whether the plaintiff has produced evidence that casts doubt on the employer's explanation, and, if so, how strong it is." *Id.* at 400, n.4.

Gulley argues that Oakland County's claim that she was unqualified for the MEI position lacks credibility based upon the County's alleged preferential treatment of two other County employees: Gretchen Ingram and Keith Batchelor. Although she does not specifically indicate, it appears that Gulley relies upon the third method articulated above, which attacks the credibility of the employer's proffered reason and, ordinarily, consists of evidence that other employees were treated more favorably. *See Manzer*, 29 F.3d at 1084 ("The third showing is also easily recognizable and, ordinarily, consists of evidence that other employees, particularly employees not in the protected

11

class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff."). This type of rebuttal is a direct attack on the credibility of the employer's proffered motivation for taking the adverse action against the plaintiff. *Id.*

### i. Gretchen Ingram

Gulley asserts that Oakland County's proffered reason for not permitting her to bump into the MEI position was pretextual because, "[w]hile arguing that Ms. Gulley did not have the requisite qualifications, Oakland County provided false documentation that Gretchen Ingram had the minimum qualifications." (Gulley Br. at 18.) The "false documentation" to which Gulley refers is Ingram's job application. During the discovery process in the instant action, Gulley deposed Ingram on April 26, 2010. (Dep. of Gretchen Ingram, Dist. Ct. Docket No. 22-24.) Ingram had been employed as an MEI for five years. *Id.* During the deposition, Ingram was questioned about her qualifications for the MEI position and whether she met the minimum qualifications for the job. *Id.* at 1–32. As Ingram testified, it became clear that she had not been entirely truthful on her application, and that if she had been truthful she would not have met the minimum qualifications for the MEI position. *Id.* Gulley concludes that Oakland County's claim that it denied her request to bump into the MEI position is not credible because, "[t]he unrefuted and undeniable fact is that Oakland County employed Ms. Ingram and allowed her to work for over five years without the minimum qualifications." (Gulley Br. at 19.) Gulley's argument, however, misses the mark.

Leaving aside the inquiry as to whether Ingram is an appropriate comparator,[7] it is not disputed that Oakland County was unaware that Ingram had lied on her application until that fact came to light in her April 2010 deposition. Ingram certified that the "statements made [on the application] were true, complete, and accurate to the best of [her] knowledge." (Dep. of Gretchen Ingram, Dist. Ct. Docket 18-27, at 39: 3–12.) There is no evidence before us that would suggest that Oakland County had any reason not to believe Ingram and, once the County was informed of her testimony, it subpoenaed Ingram's prior employment records, determined that she had in fact lied on her job application, and sought her termination. Oakland County was permitted to, and did, reasonably rely upon the particularized facts that were before it when it hired Ingram. *Romans v. Mich. Dep't of Human Servs.*, 668 F.3d 826, 839 (6th Cir. 2012) ("Defendant can overcome Plaintiff's claims of pretext if it is 'able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made.'") (quoting *Wright v. Murray Guard Inc.*, 455 F.3d 702, 707-08 (6th Cir. 2006)). Thus, we find that Oakland County easily overcomes Gulley's claim of pretext related to Oakland County's alleged preferential treatment of Ingram.

### ii. Keith Batchelor

Again leaving aside the issue of whether Batchelor is similarly situated to Ingram for the purpose of this analysis, Gulley contends that when Batchelor's MEI position was eliminated, he was

---

[7] "In order to show that an employer's proffered nondiscriminatory explanation is pretext on the grounds that a similarly situated employee received disparate treatment for the same conduct, 'the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in all of the relevant aspects.'" *Weigel*, 302 F.3d at 378–79 (quoting *Ercegovich*, 154 F.3d at 352).

permitted to transfer to another position at the exact same pay. Ultimately, Batchelor transferred back into the MEI position when one became available. This treatment, however, is the same treatment that was offered to Gulley. The only difference is that Gulley would have transferred to a position at a slightly lower salary. In light of all of the evidence before the court, no reasonable jury could rely upon this difference as sufficient to cast doubt on Oakland County's proffered reason for denying Gulley's request to bump into an MEI position.

### c. Conclusion - summary judgment decision

In light of the foregoing, we affirm the district court's grant of summary judgment in favor of Oakland County.

## B. Denial of Motion for Reconsideration

The district court denied Gulley's Motion for Reconsideration.

### 1. Standard

Gulley moved for reconsideration of the district court's grant of summary judgment in favor of Oakland County under that court's Local Rule 7.1 and Federal Rule of Civil Procedure 59. "Generally, the denial of a motion to reconsider is reviewed for an abuse of discretion." *Gage Prods. Co. v. Henkel Corp.*, 393 F.3d 629, 637 (6th Cir. 2004) (citing *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003); *GenCorp, Inc.*, 178 F.3d at 832)). "However, when a Rule 59(e) motion seeks reconsideration of a grant of summary judgment, this Court conducts a *de novo* review using the same legal standard employed by the district court." *Id.* (citing *Smith v. Wal-Mart Stores, Inc.*, 167 F.3d 286, 289 (6th Cir. 1999); *Columbia Gas Transmission, Corp. v. Limited Corp.*, 951 F.2d 110, 112 (6th Cir. 1991)).

Here, the district court denied Gulley's motion relying only on its Local Rule 7.1, and Gulley directs her appeal only to the standard employed by the Local Rule. We review appeals of denials of reconsideration under the Eastern District of Michigan's Local Rule 7.1 for abuse of discretion. *PT Pukuafu Indah v. S.E.C.*, 661 F.3d 914, 924 (6th Cir. 2011). The Eastern District of Michigan Local Rule 7.1 provides "that the movant must show both that there is a palpable defect in the opinion and that correcting the defect will result in a different disposition of the case." *Id.* at 924 (citing E.D. Mich. LR 7.1(g) and noting that the provision is now found at subsection (h)). The Local Rule also states that merely presenting the same issues that the court previously ruled on is not an acceptable ground for reconsideration. *Id.*

Although the standard employed makes no difference to the outcome here, we review *de novo* the denial of the motion in accordance with our usual practice of review of denials of motions to reconsider the grant of summary judgment filed under Rule 59. Under Rule 59, "a district court may alter a judgment . . . based on (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Nolfi v. Ohio Ky. Oil Corp.*, 675 F.3d 538, 551–52 (6th Cir. 2012) (citing *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010)).

## 2. Discussion

Gulley argues that "the court erred in granting summary judgment as there were yet material issues of fact still in dispute, and the court failed to consider the evidence presented in a light most favorable to the opposing party, *i.e.* Plaintiff Joyce Gulley." (Mot. Recons., Dist. Ct. Docket No. 37, at 2.) Gulley then goes on to reargue her positions that she advanced in her Memorandum in

Opposition to Oakland County's Motion for Summary Judgment and to explain why she disagrees with the district court's analysis. A Rule 59(e) motion is not properly used as a vehicle to re-hash old arguments or to advance positions that could have been argued earlier, but were not. *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998). Moreover, under the Eastern District of Michigan Local Rule 7.1, Gulley was required to both show that there is a palpable defect in the opinion and that correcting the defect will result in a different disposition of the case, neither of which she did. Therefore, we affirm the district court's denial of Gulley's Motion for Reconsideration.

## C. Discovery

The district court denied as moot Gulley's Motion to Extend Discovery and/or Supplement Witness and Exhibit Lists.

### 1. Standard

We review a district court's decisions regarding discovery requests for abuse of discretion. *United States ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503, 510 (6th Cir. 2009) (citing *Popovitch v. Sony Music Entm't, Inc.*, 508 F.3d 348, 360 (6th Cir. 2007); *Ivory v. Jackson*, 509 F.3d 284, 297 (6th Cir. 2007)). "'Abuse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment.'" *Id.* (citing *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008)).

### 2. Discussion

Gulley contends that the district court abused its discretion by denying her request to extend discovery and/or to permit her to supplement her witness and exhibits lists. Gulley submits that even

16

though she diligently engaged in discovery, she discovered evidence related to Gretchen Ingram, the Oakland County MEI with whom Gulley has sought to compare herself, that needed further inquiry. Additionally, she argues that the documents related to this discovery and other records she sought outside of the scheduled discovery time should have been added to her exhibit list. Finally, Gulley contends that she should also been permitted to add certain witnesses to her witness list.

The factors the Court considers when reviewing a district court's denial of a request for additional time to conduct discovery "include: (1) when the moving party learned of the issue that is the subject of discovery; (2) how the discovery would affect the ruling below; (3) the length of the discovery period; (4) whether the moving party was dilatory; and (5) whether the adverse party was responsive to prior discovery requests. *Dowling v. Cleveland Clinic Found.*, 593 F.3d 472, 478 (6th Cir. 2010). "The overarching inquiry in these overlapping factors is whether the moving party was diligent in pursuing discovery." *Id.*

As to the first and fourth inquiries, Gulley does not dispute Oakland County's assertion that she was provided all of the personnel files she requested from Oakland County by March 24, 2010, about 60 days before the close of discovery. Gulley completed all depositions by April 26, 2010, about 30 days before the close of discovery. It was on this date that Gulley became aware of the Ingram issue. Gulley, however, engaged in no discovery during the entire last month of the discovery period. Gulley then moved for an extension of time two months after she found out about the Ingram issue, which was one month after discovery had closed and after Oakland County had filed its summary judgment motion.

17

Second, Gulley makes no argument as to how the evidence she may have obtained if she had been granted permission to seek it would have affected the district court's ruling. Indeed, in an email to Oakland County's counsel, Gulley's counsel requested a stipulation to her proposed request for an extension of discovery specifically indicating that she did not wish to engage in further discovery, but rather, needed more time to review the discovery she had been given. (Email, Dist. Ct. Docket No. 21-2) ("Just for the record I'm not trying to do any more depositions or send out Interrogatories. I just need to finish identifying all of the documents which are voluminous in this case, and to complete our exhibit list and name all of the witnesses identified during discovery.").

Regarding the third inquiry into whether the district court abused its discretion in denying Gulley's request for an extension of discovery, the length of time permitted for discovery was seven months. (Scheduling Order, Dist. Ct. Docket No. 6, at 1; Stipulated Discovery Order, Dist. Ct. Docket No. 17, at 1.) Seven months is sufficient time to conduct discovery in an employment discrimination case such as this one.

As to the fifth and final query, there is no evidence indicating that Oakland County failed to timely respond to Gulley's discovery requests.

With regard to the remaining portion of Gulley's motion, her request to supplement her witness and exhibit lists, those requests were rendered moot by the district court's grant of summary judgment in favor of Oakland County.

For these reasons, we affirm the district court's denial as moot of the portion of Gulley's Motion to Extend Discovery and/or Supplement Witness and Exhibit Lists regarding her request to

18

supplement her witness and exhibit lists and affirm the district court's denial of Gulley's request for an extension of discovery on the grounds set forth herein.

## IV. CONCLUSION

For the reasons stated above, we **AFFIRM** the district court's (1) grant of summary judgment in favor of Oakland County, (2) denial of Gulley's request for reconsideration of that decision, and (3) denial of Gulley's request to extend discovery and to supplement her witness and exhibit lists.